Jerome B. E. Wolff, S.
The decedent, Ella B. Crosby, executed a holographic will on April 10,1936. The decedent died on November 8, 1938, and the will was probated on January 3, 1939, in Seneca County. The will was drawn by the decedent herself and consists of numerous directions intermingled with trusts. The pertinent section of the will which has been brought before this court for interpretation and construction is as follows:
‘ ‘ At the death of Calvin and Harry White and their wives Agnes M. and Lena White, the estate is to be divided equally between Mrs. Harriet Old at the present writing living in Rochester, Mrs. Jeanette Hanny, Mrs. Alice Frivel living in Buffalo or their heirs and Calvin’s grandson (if he is living) or his heirs, if not his share will be given to the three daughters of Calvin White. ’ ’
On May 16, 1939, the Honorable Leon S. Church, Surrogate of Seneca County, in another construction proceeding concerning the same will, in an order excised cross remainders of income concerning the lives of Agnes M. White and Lena White and also the names of Agnes M. and Lena White from that portion of the will as above quoted, and then interpreted that the testatrix meant “Hugh Morton White Jr.,” as the grandson of Calvin White. Since no decision was made prior to the decree, this court must resort to what records are available.
*669 Ths petition for construction at that time pointed out that the wording in the testatrix’ will created a trust which suspended the power of alienation for more than two lives in being and it was urged that the testatrix’ intention was to provide primarily for Calvin and Harry White and that to render the entire first paragraph of the will containing an extensive trust invalid would throw the estate into intestacy and thus others would inherit.
A reading of the entire will illustrates that by the use of an additional trust for the benefit of Calvin and Harry White and further wording and directions set forth by the testatrix, that her main solicitude was toward Calvin and Harry White and the children of Calvin White.
The terminus of the extensive trust after the excision by the Surrogate leaves a remainder upon the death of Calvin and Harry White to be divided equally among Harriet Old, Jeannette Hanny, Alice Frivel or their heirs and Hugh Morton White, Jr. (if he is living) or his heirs and if not his share is to be given to Harriet Old, Jeannette Hanny and Alice Frivel in equal parts.
Chronologically, we now have reached a point where now the two life beneficiaries, Calvin and Harry White are both deceased, and all the remaindermen have predeceased the life beneficiaries, except Hugh Morton White, Jr.
The petition for construction of a will in reference to this portion has been filed by Amanda E. Olds, the second wife of Henry Olds whose first wife was Harriet Olds, one of the remaindermen.
The questions presented are: (1) was the interest of Harriet Olds vested as of the date of death of the decedent or was the interest of Harriet Olds contingent upon survival of both life beneficiaries 1 (2) if the interest of Harriet Olds was vested and not contingent upon survival, then can Amanda Olds, the second wife of Henry Olds inherit Henry Olds’ interest in the trust which he would have derived through his wife’s interest as a remainderman 1
One contention urged by counsel is that the interest of the remainderman is contingent upon survival of both life beneficiaries.
First of all there are no words used by the testatrix to indicate that she wished the remaindermen to outlive the life beneficiaries. The will does not contain any further dispository clauses which would so modify or limit the trust to create an incident or condition of survivorship.
“ Tf the testator’s intention is not clear then it ‘must be gleaned not from a single word or phrase but from a sympathetic *670 reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.’” (Matter of Larkin, 9 N Y 2d 88, 91; Matter of Fabbri, 2 N Y 2d 236, 240; Matter of Gautier, 3 N Y 2d 502, 509.)
All the life beneficiaries and the remaindermen were all alive at the time of the execution of the will and the death of the decedent. The testatrix in drawing her will knew at that time whom she wished to have as objects of her bounty, in fact, her intentions in this regard are reiterated in her will.
The only exception was Calvin White’s grandson whose father had predeceased the testatrix and was expressly mentioned as such in the will. Hugh Morton White, Jr., was approximately 10 years old at the time of the execution of the will.
The instant case is distinguished from Matter of Larkin (supra) in that there is no further clause which would create a substitution which in turn could be interpreted as words of ‘ ‘ survivorship. ’ ’
In the Matter of Gulbenkian (9 N Y 2d 363) additional phraseology was interpreted as to indicate an intention of the decedent to create a condition of survivorship.
It is my opinion that the remainder interest was not conditioned upon the remaindermen surviving the life beneficiaries.
The Court of Appeals in Matter of Gulbenkian (supra, p. 370) noted that “ If he [the testator] had intended an indefeasible gift, he could have ended paragraph Fifth after the bequest of the remainder ‘ in equal shares ’ ”. Judge Full in his dissent concurred with this part of the opinion and also cites Matter of Campbell (307 N. Y. 29) which had almost similar phraseology which could have created an indefeasible remainder interest if the will had not gone further.
In the decree of Surrogate 'Church as afore-mentioned it is stated “ that upon the death of the said Calvin White and Harry White, that portion of the testatrix’ estate shall be distributed in equal shares to the three daughters of Calvin White, viz: Harriet Old, Jeannette Hanny and Alice Frivel ”.
Therefore, the trust as contained in the will of Ella B. Crosby created an indefeasible vested remainder in Harriet Olds, Jeannette Hanny, Alice Frivol and Hugh-Morton White, Jr., at the time of the testatrix’ death.
The only question remaining is whether or not Amanda Olds can inherit the vested interest of Harriet Olds.
Harriet Olds died in January, 1951, her husband was married to Amanda Olds sometime later. Henry Olds died on January 27,1961, three days prior to the death of the last life beneficiary, Calvin White.
*671 Having determined that Harriet Olds has an indefeasible vested remainder only subject to the time of distribution, her husband, Henry Olds, as a surviving spouse, inherited his share in the Ella B. Crosby estate by virtue of sections 47-c and 83 of the Decedent Estate Law.
Furthermore, a vested interest, and especially in this case, an indefeasible interest, is descendible, devisable and alienable. (Real Property Law, § 59; 2 Powell, Real Property, § 283.)
The amount or value of the vested interest would be determined upon the death of Calvin White. The vested interest of Harriet Olds became the property of Henry Olds upon his wife’s death and became a part of his estate when Henry Olds died. Amanda E. Olds as the wife and sole heir of her husband would be entitled to that interest.